UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ZHUJITOP HARDWARE TOOLS CO., LTD.,

        Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

___/

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF
AND DEMAND FOR JURY TRIAL**

Zhujitop Hardware Tools Co Ltd. ("Plaintiff") hereby brings the present action against the individuals, Partnerships and Unincorporated Associations identified on Schedule "A" (collectively, "Defendants"). Defendants have willfully infringed one or more claims of U.S. Patent No. 10,875,158 B2 ("Plaintiff's Patent" or "the '158' patent") by making, using, offering for sale, selling, distributing and/or importing into the United States for subsequent sale and use of authorized and unlicensed products, namely the Tool with Function of Fastening and Cutting Clamping Band of the '158' patent ("Infringing Products"). In support of its claims, Plaintiff alleges as follows:

        **I.**        **NATURE OF ACTION**

1. This action is for patent infringement arising under the patent law of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, 285, and 289.

2. Plaintiff has filed this action to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into

the United States for subsequent sale or use unauthorized and unlicensed Infringing Products that infringe Plaintiff's Patent, U.S. Patent No. 10,875,158 B2. Attached hereto as **Exhibit 1** is a true and correct copy of the '158' patent for the Tool with Function of Fastening and Cutting Clamping Band. Defendants create e-commerce stores operating under one or more seller storefronts that are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products to unknowing consumers. E-commerce stores operating under the seller storefronts share unique identifiers establishing a logical relationship between them, suggesting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more seller storefronts to conceal both their identities and the full scope and interworking of their operation. Plaintiff has filed this action to combat Defendants' infringement of its patented Patent, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented Patent as a result of Defendants' actions and seeks injunctive and monetary relief.

## II. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least the Internet based e-commerce stores and fully interactive commercial Internet website accessible in Florida and

operating under their Seller Storefronts.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Florida, through at least the fully interactive e-commerce stores operating under the Defendants' seller storefronts identified on **Schedule A**. Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Storefronts, offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered patent to residents of Florida. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

### III. THE PARTIES

**PLAINTIFF SHENZHEN CHITADO TECHNOLOGY CO., LTD**

4. Plaintiff is an entity in Zhejiang, China.

5. Plaintiff is the assignee of the '158' patent.

6. Plaintiff's products are distributed and sold to consumers throughout the United States, including consumers in Florida.

7. Plaintiff uses its distinctive patented Tool with Function of Fastening and Cutting Clamping Band in connection with Plaintiff's products.

8. Plaintiff is the lawful owner of all right, title, and interest in and to the '158' patent. The patent for the Plaintiff was lawfully issued on December 29, 2020. *See* **Exhibit 1**.

**THE DEFENDANTS**

9. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under the Seller Storefronts identified on Schedule A and/or other Seller Storefronts not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

10. On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

11. In recent years, Plaintiff has identified numerous fully interactive, e-commerce stores, including those operating under the seller storefronts identified on Schedule A, which were offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. Id. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that

infringe Patent patents, thus closing a loophole currently exploited by infringers.[1] Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

12. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age the Internet,* 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third- party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]." **Exhibit 3** at 186-187.

13. Defendants have targeted sales to Florida residents by setting up and operating e-

---

[1] See Press Release, U.S. Senator Tom Tillis, *Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses* (Dec. 5, 2019), https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislation- to-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

commerce stores that target United States consumers using one or more Seller Storefronts, offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Florida.

14. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by e- commerce stores operating under the seller storefronts so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the seller storefronts appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, and/or PayPal. E-commerce stores operating under the seller storefronts often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the Plaintiff's Patent, and none of the Defendants are authorized retailers of genuine Plaintiff's Products.

15. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Storefronts by providing false, misleading and/or incomplete information to e- commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained seller storefronts to prevent discovery of their true identities and the scope of their e-commerce operation.

16. On information and belief, Defendants regularly register or acquire new seller storefronts for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

17. Even though Defendants operate under multiple fictitious Storefronts, the e-commerce stores operating under the Seller Storefronts often share unique identifiers, such as

templates with common elements that intentionally omit any contact information or other information for identifying Defendants or other seller storefronts they operate or use. E-commerce stores operating under the Seller Storefronts include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products for sale by the seller storefronts bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

18. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

19. Infringers such as Defendants typically operate under multiple Seller Storefronts using multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

20. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for

sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the Plaintiff's Patent. Each e-commerce store operating under the seller storefronts offers shipping to the United States, including Florida, and, on information and belief, each Defendant has sold Infringing Products into the United States and Florida over the Internet.

21. Defendants' infringement of the Plaintiff's Patent in the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

22. Defendants' infringement of the Plaintiff's Patent in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Florida, is irreparably harming Plaintiff.

## COUNT I
## INFRINGEMENT OF UNITED STATES PATENT NO. 10,875,158 B2
## (35 U.S.C. § 271)

23. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

24. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the Tool with Function of Fastening and Cutting Clamping Band claimed in the Plaintiff's Patent.

25. Defendants have infringed the Plaintiff's Patent through the aforesaid acts and will

continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. The issue of "willful" infringement measures the infringing behavior, in the circumstances in which the infringer acted, against an objective standard of reasonable commercial behavior in the same circumstances. *Medtronic Xomed, Inc. v. Gyrus Ent LLC,* 440 F. Supp. 2d 1300, 1314 (M.D. Fla. 2006). The extent to which seller storefronts disregarded the property rights of Plaintiff, the deliberateness of Seller Storefronts' tortious acts and other manifestations of unethical and injurious commercial conduct provide the grounds for a finding of willful infringement and the enhancement of damages. *See Id.*

26. Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff. Therefore, Plaintiff is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

27. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the '158' patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products or services that come within the scope of the '158' patent.

28. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by Patent Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, Defendants' profits pursuant to 35 U.S.C. § 289, and any other damages as

appropriate pursuant to 35 U.S.C. § 284.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, copy or colorable imitation of the Patent claimed in the Plaintiff's Patent;

   b. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Plaintiff's Patent; and

   c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon (collectively, the "Third Party Provider") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Patent claimed in the Plaintiff's Patent;

3) That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the Plaintiff's Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants,

together with interest and costs, pursuant to 35 U.S.C. § 284;

4) That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of the Plaintiff's Patent be increased by three times the amount thereof, as provided by 35 U.S.C.§ 284.

5) In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of the Plaintiff's Patent, pursuant to 35 U.S.C. § 289;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 30th day of May 2021.

Respectfully submitted,

_____
Andrew J. Palmer
Palmer Law Group
5353 N. Federal Highway, Suite 402
Fort Lauderdale, FL 33065
954-491-1997 (facsimile)
ajpalmer@gasmanlaw.com